Webuild v. WSP USA Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2023

(Argued:  November 21, 2023                    Decided:  July 19, 2024)

Docket No. 23-73

_____

WEBUILD S.P.A.,

*Applicant-Appellant,*

SACYR S.A.,

*Applicant,*

- v. -

WSP USA Inc.,

*Respondent-Appellee,*

REPUBLIC OF PANAMA,

*Intervenor-Appellee.*[*]

_____

_____

[*]  The Clerk of Court is instructed to amend the official caption to conform with the above.

Before:  KEARSE, CALABRESI, and NATHAN, *Circuit Judges*.

Appeal from a December 19, 2022 order of the United States District Court for the Southern District of New York, Lewis A. Kaplan, *Judge*, (1) vacating a May 19, 2022 order that granted the *ex parte* application of applicant-appellant Webuild S.P.A. for an order under 28 U.S.C. § 1782 allowing it to obtain discovery from respondent WSP USA for use in an international arbitration proceeding conducted under the auspices of the International Centre for the Settlement of Investment Disputes ("ICSID"), and (2) quashing the subpoena served by Webuild on WSP.  The December 19, 2022 order granted motions by WSP USA and intervenor Republic of Panama to vacate the May 2022 order and quash Webuild's subpoena in light of (A) the Supreme Court's June 2022 ruling in *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619 (2022), that § 1782 authorizes discovery only for proceedings before entities that exercise governmental or intergovernmental authority, and (B) the district court's conclusion that an ICSID arbitration tribunal is not such an entity.  *See In re WEBUILD S.P.A.*, No. 22-mc-140, 2022 WL 17807321 (S.D.N.Y. Dec. 19, 2022).  On appeal, Webuild contends that the district court erred in failing to find that ICSID arbitration tribunals are sufficiently imbued with governmental authority to be within the scope of § 1782.  We find no error in the December 19, 2022 Order.

Affirmed.

HANSEL PHAM, Washington, D.C. (Carolyn B. Lamm, Kristen M. Young, Nicolle E. Kownacki, White & Case, Washington, D.C., on the brief), *for Applicant-Appellant*.

SAMUEL LONERGAN, New York, New York (Mélida N. Hodgson, Mitchell R. Stern, Nathan A. King, Arnold & Porter Kaye Scholer, New York, New York; Eli Whitney Debevoise II, Sally L. Pei, Arnold & Porter Kaye Scholer, Washington, D.C., on the brief, *for Intervenor-Appellee*; Raymond DeLuca, Jeffery Mullen, Cozen O'Connor, Philadelphia, Pennsylvania; Rachel B. Soloman, Cozen O'Connor, New York, New York, on the brief, *for Respondent-Appellee*), *for Appellees*.

URJA MITTAL, Appellate Staff Attorney, Washington, D.C. (Bryan M. Boynton, Principal Deputy Assistant Attorney General, Sharon Swingle, Appellate Staff Attorney, Civil Division, United States Department of Justice, Washington, D.C., Damian Williams, United States Attorney, on the brief) *for amicus curiae United States of America in support of affirmance*.

PER CURIAM:

Applicant-appellant Webuild S.P.A. ("Webuild") appeals from a December 19, 2022 order ("December 2022 Order") of the United States District Court for the Southern District of New York, Lewis A. Kaplan, *Judge*, (1) vacating a May 19, 2022 order ("May 2022 Order") that granted the *ex parte* application of Webuild for an order under 28 U.S.C. § 1782 allowing it to obtain discovery from respondent WSP USA ("WSP") for use in an international arbitration proceeding conducted under the auspices of the

- 3 -

International Centre for the Settlement of Investment Disputes ("ICSID" or the "Centre"), and (2) quashing the subpoena served by Webuild on WSP. The December 2022 Order granted motions by WSP and intervenor Republic of Panama ("Panama") to vacate the May 2022 order and quash the subpoena in light of (A) the Supreme Court's June 2022 ruling in *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619 (2022) ("*ZF Automotive*"), that § 1782 authorizes discovery orders only for use in proceedings before foreign or international tribunals that exercise governmental or intergovernmental authority, and (B) the district court's conclusion that an ICSID arbitration tribunal is not such an entity. On appeal, Webuild contends that ICSID tribunals are sufficiently imbued with governmental authority to be within the scope of § 1782. Finding no error in the district court's December 2022 Order, we affirm.

## I. BACKGROUND

As did the district court in its December 2022 Order, we assume familiarity with the parties' "pleadings and the undisputed facts therein," *In re WEBUILD S.P.A.*, No. 22-mc-140, 2022 WL 17807321, at *1 (S.D.N.Y. Dec. 19, 2022), which we summarize below. For purposes of clarity, we note that in the ICSID rules governing arbitrations, "Panel of Arbitrators" refers to the roster of qualified persons designated by ICSID

- 4 -

Member States (up to four per Member State, from any state), plus 10 such persons (from 10 States) designated by the ICSID Chairman, who are willing to serve as arbitrators (*see* ICSID Convention, Regulations & Rules ("ICSID Rules") Ch. I, sec. 4). The ICSID panel of arbitrators chosen or appointed to decide a dispute is called the "Arbitral Tribunal" or "Tribunal." (*Id*. Ch. IV, sec. 2.)

A. *The Present Proceeding and the District Court's May 2022 Order*

Webuild, formerly known as Salini Impregilo S.p.A., is an Italian investment company that specializes in infrastructure projects. Webuild and three other companies, including the Spanish company Sacyr Vallehermoso S.A. ("Sacyr"), formed the consortium Grupos Unidos por el Canal S.A. ("GUPC")--a Panamanian project company--to facilitate investment in a proposed expansion of the Panama Canal, the "Third Set of Locks Project" (or the "Project"). The Project contract was awarded to GUPC by the Panama Canal Authority (Autoridad del Canal de Panamá, or "ACP") in 2009. Construction was completed in 2016.

In 2020, Webuild initiated an ICSID arbitration against Panama, as allowed by a bilateral investment treaty (or "BIT") between Panama and Italy, the Agreement Between the Republic of Panama and the Italian Republic on the Promotion and Protection of Investments ("Panama-Italy BIT"). Webuild alleged that Panama breached

its obligations under the Panama-Italy BIT, international law, and Panamanian law, principally by ACP's failure to provide the consortium with complete and accurate information during the bidding and procurement processes for the Third Set of Locks Project, and by ACP's unfair demands that Webuild make contributions (without reimbursement) to finance and pay for the Project. For use in its ICSID arbitration against Panama, Webuild's *ex parte* application in the present proceeding sought authorization for discovery from WSP as to information provided to ACP during the Project by ACP's engineering consultant Parsons Brinkerhoff, a firm that, during the course of the Project, was acquired by WSP. Sacyr, originally a co-applicant in the present proceeding for § 1782 discovery from WSP, had made similar allegations in its own international arbitration proceeding against Panama, commenced in 2018 pursuant to a bilateral investment treaty between Panama and Spain.

The district court initially, in its May 2022 Order, granted the *ex parte* applications of Webuild and Sacyr. Thereafter, Panama moved to intervene, to vacate the May 2022 Order, and to quash the subpoena served on WSP; the Supreme Court issued its decision in *ZF Automotive* (*see* Part II.A. below); WSP moved to have the May 2022 Order vacated and the subpoena quashed; and Sacyr voluntarily withdrew its request for § 1782 discovery, *see* December 2022 Order, 2022 WL 17807321, at *1 n.1.

B. *The District Court's Post-*ZF Automotive *December 2022 Order*

In *ZF Automotive*, the Supreme Court considered the authorization in § 1782 for a district court to order discovery from a person within its district for use in a "foreign or international tribunal," 28 U.S.C. § 1782(a). As discussed more fully in Part II.A. below, the Court considered several factors, such as a tribunal's creation, funding, operations, and transparency, and concluded that § 1782's authorization for discovery orders applies only to proceedings before foreign or international adjudicative entities that exercise governmental authority.

In light of that ruling and the factors considered by the *ZF Automotive* Court, the district court granted the motions of Panama and WSP to vacate the May 2022 Order and quash Webuild's subpoena to WSP. The district court found principally that the ICSID "arbitration panel at issue here"--"the 'Webuild Tribunal,'" December 2022 Order, 2022 WL 17807321, at *1--is neither a pre-existing entity nor one created by the Panama-Italy BIT, but rather is a Tribunal specially formed following Webuild's request for arbitration, *id*. at *1-*2; that the Webuild Tribunal members were chosen by the parties and had no official affiliation with Italy, Panama, or any other governmental or intergovernmental entity, *id*. at *2; and that the Webuild Tribunal does not receive any "government funding" but instead, in accordance with "the ICSID arbitration rules," is

- 7 -

"funded jointly by the parties," *id*. (internal quotation marks omitted). The court concluded that

> Italy and Panama did not intend to imbue the [Webuild Tribunal]
> with governmental authority, and therefore the Webuild Tribunal
> does not constitute a "foreign or international tribunal" within the
> meaning of Section 1782.

*Id*. at *3.

# II. DISCUSSION

On appeal, Webuild contends that ICSID Arbitral Tribunals are "quintessential 'international tribunals'" with "numerous features" that make "clear that [they] are imbued with governmental authority." (Webuild brief on appeal at 1.) As discussed in Part II.B. below, Webuild points out that ICSID itself is a permanent institution, having been established by the International Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention" or "Convention"), and that the Convention regulates various aspects of ICSID's operations with regard to arbitrations.

Reviewing *de novo* the district court's ruling that, in light of the Supreme Court's decision and reasoning in *ZF Automotive*, the Webuild Tribunal does not qualify

as a "foreign or international tribunal" as that term is used in § 1782, we conclude that Webuild's contentions are without merit.

A.  *The Supreme Court's Decision in* ZF Automotive

Section 1782(a) of Title 28 provides, in pertinent part, as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.

28 U.S.C. 1782(a).  In *ZF Automotive*, in which the Supreme Court considered two cases involving applications for § 1782 discovery to be used in foreign arbitration proceedings, the Court began by exploring whether Congress intended "foreign or international tribunal" to include foreign private--*i.e.*, non-governmental--adjudicative bodies.

In fathoming the meaning of "foreign or international tribunal" in that section, the Court noted, *inter alia*, that "the animating purpose of § 1782 is comity," and that "[p]ermitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance." *ZF Automotive*, 596 U.S. at 632.  The Court found it "difficult to see how enlisting district courts to help private bodies would serve" the interests of comity and respect. *Id*.

The Court also noted that in the United States, "[a]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration," *id*. at 636 (internal quotation marks omitted), and that under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, the discovery allowed in domestic arbitrations is more circumscribed than what can be authorized under § 1782 for foreign or international proceedings, *see ZF Automotive*, 596 U.S. at 632. Thus, construing § 1782 to authorize discovery in proceedings before private foreign or international bodies would be incongruous. *See id*. at 633 ("[i]t's hard to conjure a rationale for giving parties to private foreign arbitrations such broad access to federal-court discovery assistance in the United States while precluding such discovery assistance for litigants in domestic arbitrations" (internal quotation marks omitted)).

The Supreme Court concluded that "§ 1782 requires a 'foreign or international tribunal' to be governmental or intergovernmental." *Id*. "[O]nly a governmental or intergovernmental adjudicative body constitutes a 'foreign or international tribunal' under § 1782. Such bodies are those that exercise governmental authority conferred by one nation or multiple nations." *Id*. at 638.

Of the two cases at issue in *ZF Automotive*, the one more similar to the present case involved a § 1782 application for discovery to be used in an *ad hoc* arbitration between Lithuania and a Russian investor's assignee (the "Investor") with

respect to a failed Lithuanian bank. The arbitration was initiated by the Investor as permitted by a bilateral investment treaty between Lithuania and Russia, and was to be conducted in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law ("UNCITRAL Rules"). *Id*. at 625-26. In determining whether the UNCITRAL panel qualified as a foreign or international tribunal within the meaning of § 1782, the Court considered a number of factors.

The Court noted that the mere fact that a BIT allows an investor to opt for an *ad hoc* arbitration against a sovereign state does not mean that the ensuing arbitration panel has any governmental authority. "[A] body does not possess governmental authority just because nations agree in a treaty to submit to arbitration before it. The relevant question is whether the nations intended that the ad hoc panel exercise governmental authority." *Id*. at 637. The Court found no such intent indicated in the Russia-Lithuania BIT.

It found that the BIT itself did not create the UNCITRAL panel. In the treaty, each of the two states agreed to submit to an *ad hoc* arbitration "*if* an investor chose it." *Id*. at 636 (emphasis added). Further, the options that the BIT offered to disappointed investors included "[a] competent court or court of arbitration of the Contracting Party," thereby giving them "the choice of bringing their disputes before a pre-existing governmental body." *Id*. at 634-35 (internal quotation marks omitted).

- 11 -

Thus, the *ad hoc* UNCITRAL arbitration panel came into existence--and had authority to resolve the dispute before it--"because Lithuania and the [Investor] consented to the arbitration, not because Russia and Lithuania clothed the panel with governmental authority." *Id*. at 636.

In addition, the Court found the *ad hoc* UNCITRAL panel distinguishable from governmental adjudicative bodies by the UNCITRAL rules allowing the parties to choose the arbitrators for their arbitration, and by the facts that the arbitration panel members had no official affiliation with any governmental or intergovernmental entity, that the panel received no funding from a government, and that the panel could make its award "public only with the consent of both parties," *id*. at 635 (internal quotation marks omitted).

B. *Comparisons between UNCITRAL and ICSID*

As indicated in Part I.B. above, the district court found that the ICSID rules governing Arbitral Tribunals were not significantly different from those of UNCITRAL that were discussed by the Supreme Court in *ZF Automotive*. Webuild contends that this was error, arguing that ICSID Tribunals have features showing that they are "imbued with governmental authority." (Webuild brief on appeal at 1, 2, 13.) Webuild points out, *inter alia*, that ICSID itself is a permanent institution, established by the ICSID

Convention; that the ICSID Convention regulates the formation of the Panel of Arbitrators and the formation and operations of Arbitral Tribunals; that states that have ratified the Convention (*i.e.*, the "Member States") make and amend ICSID rules that govern arbitrations; and that the Convention requires ICSID to maintain an official Panel of Arbitrators comprising persons designated by ICSID Member States, a roster from which arbitrators will be appointed by ICSID if the parties who have chosen an ICSID arbitration fail to select their arbitrators. (*See id*. at 23-37.) We are not persuaded.

These arguments by Webuild focus principally on ICSID in general or on its overall roster of persons who could become members of a given Arbitral Tribunal if the parties to the arbitration fail to make their own selections. Webuild argues, for example, that because sovereign states help to fund the ICSID Centre, there is a higher level of governmental involvement in ICSID tribunals. (*See* Webuild brief on appeal 37.) This argument conflates the Centre with the Webuild Tribunal. But funding for ICSID does not fund the Tribunal, directly or indirectly: the Webuild Tribunal is instead funded through advances on arbitrator fees and expenses paid by the parties.

Finally, Webuild argues that the ICSID Convention's unique post-award procedures (both through annulment and enforcement mechanisms) distinguish the Webuild Tribunal as an international tribunal. (*See* Webuild brief on appeal 40.) For example, Webuild claims that the heightened finality accorded to tribunal awards under

the Convention renders ICSID tribunals analogous to national courts of Member States. We are not persuaded, however, that the intent to imbue tribunals with governmental authority follows from Convention procedures that accord awards with finality. Rather, these procedures merely facilitate the enforcement of ICSID awards. Nor do we find relevant the Convention's annulment procedures, which grant ICSID "Annulment Committees" the authority to annul ICSID awards upon a party's request. Here again, Webuild has shown neither that annulment is an exercise of governmental authority nor that the existence of this post-award ICSID procedure is proof that the Webuild Tribunal is itself imbued with governmental authority.

Along similar lines, Webuild argues that because the ICSID Chairman may appoint arbitrators from an ICSID-maintained Panel of Arbitrators to an Arbitral Tribunal when parties to an arbitration cannot agree on panel members or a presiding arbitrator, ICSID plays a more significant role in the composition of panels than did the panels considered in *ZF Automotive*. (*See* Webuild brief on appeal 35-36.) But that possibility has no relevance to this case, as the parties agreed on the arbitrators and the Chairman did not appoint any member of the Webuild Tribunal.

As described above, the characteristics of UNCITRAL that the *ZF Automotive* Court found insufficient to give the *ad hoc* arbitration panel at issue there a governmental character are virtually the same as those of Webuild's ICSID Tribunal.

Seeing no principled basis for distinguishing this case from *ZF Automotive*, we conclude that § 1782 discovery is not authorized for Webuild's ICSID arbitration substantially for the reasons stated by the district court in its December 2022 Order.

## CONCLUSION

We have considered all of Webuild's arguments on this appeal and have found them to be without merit. The December 2022 Order is affirmed.